**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHELLE MOUNT,** | **CIVIL ACTION** |
|         **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **PERUZZI OF LANGHORNE LLC AND** | **NO.  21-2166** |
| **TAMMY LARUE,** | |
|         **Defendants.** | |

**<u>MEMORANDUM OPINION</u>**

In this dispute about a car sale gone wrong, Plaintiff Michelle Mount brings state

common law claims for fraud and breach of contract, state statutory claims for violations of the

Pennsylvania Uniform Commercial Code, 12 Pa. C.S.A. § 6251 *et seq.* ("UCC") and the

Pennsylvania Unfair Trade Practices & Consumer Protection Law, 73 P.S. § 201-1, *et seq.*

("UTPCPL"), and federal claims for violations of the Equal Credit Opportunity Act, 15 U.S.C.A.

§ 1691, *et seq.* ("ECOA"), and the Truth in Lending Act, 15 U.S.C. § 1638, *et seq.* ("TILA").

Defendants Peruzzi of Langhorne LLC and Tammy LaRue move to dismiss pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons that follow, the Motion to

Dismiss will be granted in part and denied in part.

**I.      FACTUAL BACKGROUND[1]**

---

[1] As is required at the Motion to Dismiss stage, the facts are drawn from the Complaint and presented in the light most favorable to the plaintiff.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Buyer's Order attached as Exhibit A to Defendants' Motion to Dismiss—that Plaintiff does not dispute she signed at the same time as the Retail Installment Sales Contract, relating to the same vehicle sale—will therefore also be considered.

Plaintiff Michelle Mount, a dental assistant in Philadelphia, wanted to buy a new car.  So, she called Defendant Peruzzi of Langhorne ("Peruzzi"), a Mitsubishi dealership, in May 2020 to see if they would approve her for financing.  Peruzzi's sales representative, Defendant Tammy LaRue, directed Mount to fill out Peruzzi's online financing application.  A few months later, on August 29, 2020, LaRue texted Mount to ask if she still needed a car, and, if so, could Mount get to Peruzzi that day.  Mount did, and she could.  When Mount arrived, LaRue told her that Ally Bank had approved her for financing.  Mount signed the paperwork on the spot—a Retail Installment Sale Contract (the "RISC") and a Buyer's Order (the "BO") for the purchase of a 2020 Mitsubishi Mirage for $34,069.84, reflecting an interest rate of 18%.  Mount also traded in her 1998 Honda Civic for a $2,000 credit and made a $500 down payment.  Under the RISC, Mount's first installment payment was due September 28, 2020.  She went home that day in a new Mitsubishi Mirage, under the impression that Peruzzi had arranged financing through Ally Bank.

However, about two weeks later, the trouble started.  On September 9, 2020, LaRue told Mount that the financing bank wanted to have a "welcome call."  A couple days later, LaRue texted Mount telling her: "You have to call them or they will mot [sic] take your loan and make you return your car dear."  At this time, Mount first learned that the financing bank was Santander, not Ally Bank, and that the RISC was, according to Defendants, contingent on third-party financing that she had not yet received.  Even so, Mount completed the welcome call with Santander Bank.  After another three days, LaRue texted Mount again, this time telling her that Santander couldn't verify Mount's employment status and would refuse the loan unless Mount's boss called the bank to verify her employment.  Mount's employer called Santander the next day.  Santander was apparently not satisfied because the call came from a cell phone rather than a

2

business landline.  Mount texted LaRue informing her that Mount's employer uses her cell phone, rather than a landline, to conduct business.  Mount attests that the employment information she provided Defendants was truthful, accurate, and verified, and that Defendants never told her that they believed it to be false.

Still, one week after this exchange, on September 22, 2020, six days before Mount's first installment payment was due under the contract, Defendants repossessed the car from Mount's property, without warning and at 4:00 in the morning.  When Mount requested the return of the $2,500 she had paid towards the Mitsubishi—in the form of her Honda Civic and $500 down payment—Defendants refused.  Mount was therefore left without a car, incurred expenses for replacement transportation, suffered damage to her credit rating and reputation, and alleges that she suffered emotional distress, frustration, humiliation, and embarrassment.

## II.    DISCUSSION

Defendants' Motion to Dismiss is two-fold.  First, Defendants move to dismiss the action for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that an enforceable arbitration clause in the parties' Buyer's Order deprives the Court of jurisdiction.[2]

---

[2] There has been some debate among the courts in this Circuit over whether a Rule 12(b)(1) or a Rule 12(b)(6) motion is the proper vehicle to raise an arbitration issue at the pleading stage.  *Compare Allstate Ins. Co. v. Masco Corp.*, 2008 WL 183651, at *2 (E.D. Pa. Jan. 22, 2008) ("Where parties have agreed to submit claims to arbitration under a valid and enforceable arbitration clause or agreement, dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper."), *and Dimattei v. Diskin Motors, Inc.*, 2017 WL 1283943, at *1 n.1 (E.D. Pa. Apr. 6, 2017) (discussing the district court divide before addressing Defendant's motion pursuant to Rule 12(b)(1)), *with Giordano v. Pep Boys, Manny, Moe & Jack, Inc.*, 2000 WL 298923, at *2 (E.D. Pa. Mar. 15, 2000) (explaining that Rule 12(b)(1) "is an inappropriate basis for dismissal" based on an enforceable arbitration clause because "[s]uch a dismissal is discretionary. . .and not jurisdictional"), and *Pirito v. Penn Eng'g World Holdings*, 833 F. Supp.2d 455, 466 (E.D. Pa. 2011) (rejecting *Allstate* and considering defendant's motion pursuant to Rule 12(b)(6) because a contract-based arbitration defense is not jurisdictional).  The main operative difference is that materials outside of the pleadings may be considered on a factual challenge to jurisdiction pursuant to Rule 12(b)(1).  *See Hartig Drug Co. Inc. v. Senju Pharm. Co*., 836 F.3d 261, 268 (3d Cir. 2016) ("[W]hen reviewing a factual challenge [to jurisdiction], a court may weigh and consider evidence outside the pleadings." (internal quotation marks and citation omitted)).

Second, Defendants move to dismiss each of Plaintiff's state and federal claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' arguments and the applicable legal standards will be addressed in turn.

### A.   Arbitration Clause in the Buyer's Order

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs an arbitration agreement contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA requires parties to submit to arbitration if: 1) they entered into a valid arbitration agreement; and, 2) the dispute between the parties falls within the language of the arbitration agreement. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1988). Whether there is a valid arbitration agreement is a question of state law. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." (citation omitted)).

Defendants seek to enforce an arbitration agreement contained in the parties' Buyer's Order, but not mentioned in the RISC. However, under Pennsylvania's Motor Vehicle Sales Finance Act, an installment contract for a vehicle sale must "contain all the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold," and

---

Although the Third Circuit has yet to resolve the issue in a precedential opinion, in *Yoder* the Third Circuit explained that a motion to dismiss due to an enforceable arbitration agreement is not jurisdictional and therefore such dismissals are generally effected under Rule 12(b)(6) or Rule 56, not Rule 12(b)(1). *Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d Cir. 2004). Nevertheless, the Court found that the district court's dismissal pursuant to 12(b)(1) likewise "constituted a grant of a Rule 12(b)(6) motion" because the district court relied only on the pleadings. *Id.* Similarly, the Court here need not weigh in on this debate because, as explained *infra*, it is plain from the pleadings and undisputedly authentic documents attached to Defendants' Motion to Dismiss that there is no enforceable arbitration clause under Pennsylvania law. *See also Nova CTI Caribbean v. Edwards*, 2004 WL 35759, at *2 (E.D. Pa. Jan. 8, 2004) (acknowledging that a Rule 12(b)(6) motion would be proper but allowing defendant's motion to go forward under Rule 12(b)(1) where "the distinction between Rule 12(b)(1) and Rule 12(b)(6) is immaterial because pursuant to either ground, the arbitration clause requires arbitration of [plaintiff's] claims.").

"be complete as to all essential provisions before the buyer signs the contract." 12 Pa. C.S.A. §

6221(a). Thus, "[i]n Pennsylvania, as a matter of statute, a 'RISC subsumes all other agreements

relating to the sale' of a vehicle under the Motor Vehicle Sales Finance Act." *Gregory v. Metro*

*Auto Sales, Inc.*, 158 F. Supp.3d 302, 305 (E.D. Pa. 2016) (quoting *Knight v. Springfield*

*Hyundai*, 81 A.3d 940, 948 (Pa. Super. 2013)). Accordingly, where a Pennsylvania motor

vehicle is sold under a RISC, an arbitration clause contained solely in a document separate from

the RISC—like a Buyer's Order—is not enforceable unless the RISC incorporates it by

reference. *See, e.g., Knight*, 81 A.3d at 948-49 ("The Buyer's Order contained an arbitration

agreement, but the RISC did not. Thus, we conclude there was no enforceable arbitration

agreement"); *Gregory*, 158 F. Supp.3d at 305 (refusing to enforce arbitration clause contained

only in the Buyer's Order, not the RISC); *Guia v. World CDJR LLC*, 2019 WL 1745656, at *3

(E.D. Pa. Apr. 17, 2019) ("Under Pennsylvania law . . . an arbitration clause governing a [motor

vehicle purchase by installment] is only enforceable if it is in the installment contract itself, not

merely the buyer's order."); *cf. Kent v. DriveTime Car Sales LLC*, 2020 WL 3892978 (E.D. Pa.

July 10, 2020) (distinguishing *Gregory* and *Knight* because plaintiff's RISC explicitly stipulated

that an accompanying arbitration agreement was incorporated by reference). Here, the RISC

makes no mention of either the arbitration agreement or the Buyer's Order. Because the RISC is

silent as to any agreement to arbitrate, the arbitration clause is unenforceable under Pennsylvania

law.

### B.  Failure to State a Claim

Next, Defendants move to dismiss each of Plaintiff's six state and federal law claims

pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a complaint must be

dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P.

(12)(b)(6).  Accordingly, to survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In reviewing a complaint, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (internal quotations marks and citations omitted). However, the assumption of truth does not apply to legal conclusions, such as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### a. Plaintiff States a Claim Under the Pennsylvania Uniform Commercial Code

Count I alleges two violations of the Pennsylvania UCC provisions on repossession: 1) that Defendants unlawfully repossessed her vehicle in violation of Section 6251; and, 2) that Defendants failed to provide proper notice of repossession in violation of Section 6254 and Section 6257.  *See* 12 Pa. C.S.A. § 6251, § 6254, & § 6257.  Section 6251 provides, in pertinent part:

> An installment seller or a holder, who has lawfully acquired a motor vehicle installment sale contract, may retake possession of the motor vehicle if the buyer:
>
> (1) is in default in the payment of an amount due under the contract; or
>
> (2) has committed another breach of contract, which is by the contract specifically made a ground for retaking the motor vehicle.

*See* 12 Pa. C.S.A. § 6251(a).  Defendants argue that Plaintiff fails to state a claim because she

breached the terms of the purchasing agreement by failing to complete her credit application with

verifiable employment information, thereby justifying repossession under Section 6251(a)(2).

However, Defendants' version of events is contrary to Plaintiff's allegations, which are entitled

to an assumption of truth at this stage.  According to Plaintiff, she had not committed any breach

of the RISC at the time of repossession on September 22, 2020, and she could not be in default

as her first payment was not due until September 28, 2020.  Plaintiff alleges that she "provided

Defendants truthful, accurate, and verified information" concerning her employment, including

the phone number her employer used to conduct business.  Even assuming *arguendo* that

Plaintiff's employment information could not be verified, Defendants still have not shown that

"the contract specifically made" the provision of verifiable employment information on

Plaintiff's credit application a "ground for retaking the motor vehicle."  *See* 12 Pa. C.S.A. §

6251(a)(2).

Additionally, Section 6254 of the UCC provides that "notice of repossession shall be

delivered in person or sent by registered or certified mail" when a vehicle subject to an

installment sale contract is repossessed other than by legal process.  12 Pa. C.S.A. § 6254.

Section 6254 likewise specifies the contents of such notice.  *Id.* at § 6254(c).  Finally, Section

6257 provides that "[t]he repossessor of a motor vehicle shall give notice within 24 hours after

the repossession to . . . the local municipal police department having jurisdiction of the area

where the motor vehicle was located at the time of repossession." 12 Pa. C.S.A. § 6257.  Plaintiff

alleges that neither she nor the appropriate police department received notice of the repossession,

in writing or otherwise.  Plaintiff therefore states claims under Sections 6254 and 6257 of the

Pennsylvania UCC.  Defendants' motion to dismiss the Pennsylvania UCC claims will be

denied.

### b. Plaintiff States a Claim Under the Pennsylvania Unfair Trade Practices & Consumer Protection Law

In Count II, Plaintiff alleges that Defendants violated the Pennsylvania Unfair Trade Practices & Consumer Protection Law ("UTPCPL"), 73 P.S. §201, *et seq.* The UTPCPL provides a private right of action for purchasers of goods for personal, family, or household use who "suffer[] any ascertainable loss of money or property" as a result of an unfair or deceptive act or practice declared unlawful by the statute. 73 P.S. § 201–9.2(a). Section 201-2(4) enumerates the acts and practices covered by the UTCPCL. Plaintiff alleges that Defendants' misrepresentation that she was already approved for financing and therefore need only execute the RISC to complete her transaction was an unfair or deceptive act under the UTPCPL. Specifically, Plaintiff alleges that Defendants' conduct is an unfair practice under the following provisions in Section 201-2(4):

> 1. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> 2. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; and,
>
> 3. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201–2(4)(ii), (v), and (xxi). The latter provision—which is known as the "catch-all" provision and extends to "deceptive conduct" beyond common law fraud—is primarily at issue here. *See Gregg v. Ameriprise Fin., Inc*., 245 A.3d 637, 647 (Pa. 2021).

Defendants contend that Plaintiff has failed to plausibly allege that she justifiably relied on Defendants' alleged misrepresentation. In response, Plaintiff argues that justifiable reliance is not required under the UTPCPL catch-all provision. Plaintiff is incorrect. While Plaintiff

correctly notes that she need not prove all the elements of common law fraud to succeed under

the UTPCPL,[3] the Supreme Court of Pennsylvania recently clarified that "Section 201-9.2

creates a causation element, which requires a private plaintiff to demonstrate justifiable

reliance." *Id.* at 646; *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008), *as*

*amended* (Nov. 6, 2008) ("[W]e conclude that private plaintiffs alleging deceptive conduct under

the statute's [] catchall provision must allege justifiable reliance."). Under Section 201-9.2, a

plaintiff is entitled to relief only where she suffered loss "as a result of" an unfair act or practice.

73 P.S. § 201–9.2. Thus, "[r]egardless of which unfair method of competition a plaintiff

challenges in a private cause of action. . . Section 201-9.2 requires the plaintiff to establish

justifiable reliance." *Gregg*, 245 A.3d at 646; *see also Schwartz v. Rockey*, 932 A.2d 885, 897

n.16 (Pa. 2007) ("[T]he justifiable reliance criterion derives from the causation requirement

which is express on the face of section 9.2"). Plaintiff therefore must plausibly allege that she

"justifiably relied upon the unfair or deceptive business practice when making the purchasing

decision." *Gregg*, 245 A.3d at 646.

    Plaintiff has done so. Before she entered the RISC, Plaintiff alleges that Defendant

LaRue told her that she had been approved for financing by Ally Bank. That same day, Plaintiff

signed the RISC for the purchase a new car, paid $500 in cash, and traded in her Honda Civic.

She alleges that she did so "under the impression that Defendant[] Peruzzi arranged the financing

already through Non-Party Ally Bank." It was not until later that Plaintiff "first learned that the

financing bank was Santander, not Ally Bank," and that she had not yet been approved, despite

signing the RISC, making a down payment, and trading in her car. From these factual

---

[3] The Supreme Court of Pennsylvania held in *Gregg*, for example, that the catch-all provision employs "a
lesser, more relaxed standard than that for fraudulent or negligent misrepresentation" and thus does not
require a plaintiff to prove malicious or wrongful intent. *Gregg*, 245 A.3d at 649.

allegations, a reasonable inference can be drawn that Plaintiff justifiably relied on Defendants misrepresentations regarding her financing approval when agreeing to the terms of the RISC.  In sum, Defendants' allegedly deceptive statements regarding the source and timing of Plaintiff's financing approval "create[d] a likelihood of confusion or of misunderstanding" and induced Plaintiff to purchase a new car.  Finally, Plaintiff alleges that she suffered a loss of money and property as a result of Defendants' unfair or deceptive practices, namely her $500 down payment and her Honda Civic, worth $2,000.  Plaintiff may proceed on her UTPCPL claim.

### c.   Plaintiff States a Claim Under the Federal Equal Credit Opportunity Act

In Count III, Plaintiff alleges that Defendant Peruzzi violated the Equal Credit Opportunity Act ("ECOA") by failing to give proper written notice of the reasons for which it revoked her financing and repossessed her car.  "The ECOA requires a creditor to provide notice to an applicant when the creditor takes an 'adverse action' against the applicant . . . [including] an explanation for the creditor's 'adverse action.'"  *Scott v. Fred Beans Chevrolet of Limerick, Inc.*, 183 F. Supp.3d 691, 696 (E.D. Pa. 2016) (citing 15 U.S.C. § 1691(d)(1)-(2)).  To sustain an ECOA claim, a plaintiff "must show that (1) [the defendant] is a creditor as defined by the ECOA, (2) [the defendant] took an adverse action against [the plaintiff], and (3) [the defendant] provided notice with insufficient explanation as to why it took the adverse action."  *Id.* Defendant concedes at this stage that "Peruzzi is perhaps a creditor as defined by the ECOA," but disputes that Peruzzi took any adverse actions against Plaintiff.

Under the ECOA, an adverse action "means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).  Plaintiff alleges that she filled out Peruzzi's online credit application in May 2020, and LaRue told her that she had

been approved for financing through Ally Bank on August 29, 2020.  Later, Peruzzi changed the terms of the credit arrangement by telling her that Santander, and not Ally, would be financing the purchase and asking Plaintiff to undergo an employment verification process not previously mentioned.  Thereafter, Peruzzi revoked the credit offer by repossessing the Mitsubishi before Plaintiff began her installment payments.  While Defendant contends that Peruzzi denied her credit because it could not verify her employment status, such a denial would still constitute an "adverse action" within the meaning of Section 1691(d)(6).  At no point did Peruzzi provide Plaintiff with a written notice of the reasons for any adverse action, be it a revocation and/or change in credit terms (as Plaintiff alleges) or a denial (as Defendant characterizes it).  *See* 15 U.S.C. § 1691(d)(2).  Plaintiff has therefore adequately plead an ECOA violation and may proceed on this claim.

### d.   Plaintiff Fails to State a Claim Under the Federal Truth in Lending Act

Plaintiff broadly asserts that Defendant Peruzzi violated the TILA and its implementing regulation, Federal Reserve Board Regulation Z, 12 C.F.R. part 226.  Her theory is that Peruzzi violated the TILA by treating the sale in the RISC as conditional until it was assigned to a third-party bank.  According to Plaintiff, this undisclosed conditional term effectively shortened the first payment period—because the deal was not final until the contract was assigned—and therefore made the disclosed Annual Percentage Rate in the RISC inaccurate.  However, Plaintiff fails to connect this attenuated theory to any provision or requirement of the TILA and/or Regulation Z.  Nor does she respond to Defendants' Motion to Dismiss with any legal authority in support of her claim.

On the other hand, this exact theory was rejected by the court in *Singleton v. Jas Automotive LLC*, 378 F. Supp. 3d 334 (E.D. Pa. 2019).  The TILA requires a lender to make

certain disclosures in a consumer credit transaction including, *inter alia*, "[t]he finance charge expressed as an 'annual percentage rate[.]'"  15 U.S.C. § 1638(a)(4); *see also* 12 C.F.R. § 226.18(e) (providing that a creditor must disclose "[t]he annual percentage rate, using that term, and a brief description such as 'the cost of your credit as a yearly rate.'").  In *Singleton*, the plaintiff argued that a car dealer failed to disclose in her RISC that the two car sales at issue "were conditional on the loans' assignments, which, in turn, affected the [accuracy of the] annual percentage rates disclosed in the Installment Sale Contracts . . . .[]in violation of the TILA and Regulation Z[.]"  *Id.* at 354.  The court disagreed, concluding that "the Installment Sale Contracts, which Plaintiff signed, provide all requisite disclosures" required by the TILA.  *Id.* at 355.  To wit, the contracts disclosed the "Annual Percentage Rate" for each car, in bold type at top of the contract, and described this figure as "[t]he cost of your credit as a yearly rate."  *Id.* Moreover, the contracts disclosed that "[t]he Annual Percentage Rate may be negotiable with the Seller [JAS].  The Seller may assign this contract and retain its right to receive a part of the Finance Charge."  *Id.*

Likewise here, Plaintiff's RISC makes clear and conspicuous "Federal Truth in Lending Disclosures" at the top of the contract in bold type, including the annual percentage rate, finance charge, amount financed, and total payments.  The RISC accurately describes the annual percentage rate as "[t]he cost of your credit as a yearly rate."  Plaintiff's RISC also includes the exact same contract language as *Singleton* regarding the seller's right to assign the contract.  To the extent that Plaintiff alleges that the RISC should have included additional language stating that the transaction was contingent on third-party financing, she has pointed to no provision of the TILA or Regulation Z requiring such a disclosure.  Having failed to plausibly alleges that any specific disclosure required by the TILA or Regulation Z is absent or inaccurate in her RISC,

Plaintiff's TILA claim will be dismissed.

### e.   Plaintiff States a Claim for Breach of Contract

Next, Plaintiff alleges that Defendant Peruzzi breached the RISC by repossessing her car without cause and in violation of the express terms of the contract.  To state a claim for breach of contract, the plaintiff must properly plead: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).  Defendant challenges Plaintiff's breach of contract claims on breach and damages. Plaintiff has adequately pled both.  First, Plaintiff's contention that the repossession was without cause and in violation of the RISC plausibly alleges a breach of contract.  Section 3(d) of the RISC states that Defendant may repossess the vehicle in the event of default, "if we do so peacefully and the law allows it."  Plaintiff alleges that she was not in default—in fact her first payment was not yet due—and that the repossession was in violation of state and federal law, as discussed herein.  Plaintiff also alleges that she suffered damages as result of the unlawful repossession.  For instance, she was not compensated for her $500 down payment or her trade-in vehicle worth $2,000, she incurred expenses for replacement transportation, and her credit rating was damaged.  Plaintiff's breach of contract claim survives the Motion to Dismiss.

### f.   Plaintiff States a Claim for Fraud

Finally, Plaintiff alleges in Count VI that Defendants fraudulently represented that she had been approved for financing, which representation she relied on in entering the RISC.  To state a claim for fraud, the plaintiff must plausibly allege: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage

to the recipient as the proximate result." *Neuman v. Corn Exch. Nat. Bank & Tr. Co.*, 51 A.2d 759, 763, *supplemented sub nom.* 52 A.2d 177 (Pa. 1947).  Defendants move to dismiss, arguing that Plaintiff's allegations are insufficiently specific as to the misrepresentation, justifiable reliance, and damages.

Plaintiff's allegations once again pass muster.  Plaintiff alleges that she called Defendant Peruzzi about obtaining financing approval to purchase a new car.  During that call, Defendant LaRue directed her to submit an online financing application.  On August 29, 2020, when Plaintiff went to the Peruzzi dealership, LaRue told Plaintiff that Ally Bank had approved her for financing.  Plaintiff claims that Defendants knew this was false.  That same day, Plaintiff signed the RISC, traded in her Honda Civic, and made a $500 down payment.  Thus, Plaintiff plausibly alleges that Defendants misrepresented that she had been approved for financing to induce her to buy the new car, and that she justifiably relied on the misrepresentation when she entered the RISC, traded in her car, and made a $500 cash payment.  As discussed *supra*, Plaintiff also alleges damages as Defendants never returned her Honda Civic or her down payment.

## III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.  An appropraite order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

WENDY BEETLESTONE, J.

14